IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRINA L. PALMER,<br>    **Plaintiff,**<br><br>    v.<br><br>KRAFT FOODS GLOBAL, INC. and NABISCO, INC.,<br>    **Defendants.** | CIVIL ACTION<br><br>NO. 13-6260 |

**MEMORANDUM OF LAW RE PLAINTIFF'S MOTION FOR REMAND**

**Baylson, J.**                                                                                                   **January 29, 2014**

**I.**     **Background and Plaintiff's Allegations**

Plaintiff Trina L. Palmer filed this action in Philadelphia's Court of Common Pleas against Defendants Kraft Foods Global, Inc. and Nabisco, Inc. for violations of Philadelphia's Fair Practices Ordinance. In the Complaint, Plaintiff alleged that Defendants discriminated against her based on her disability and retaliated against her for exercising her rights to redress this discriminatory conduct. Plaintiff's Complaint only raises state-law claims.

Plaintiff was a Machine Operator for Defendant Nabisco, Inc. from August 1979 to June 2002. She is also a member of the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union AFL-CIO Local 492. On June 21, 2002, Plaintiff's hand was crushed while on the job, which resulted in permanent injuries to her right hand. DE 1 at 9. On April 25, 2005, Plaintiff returned to work as a Machine Operator. DE 1 at 10. In July 2005, Plaintiff was placed in a new position, Warehouse Material Handler, on a temporary bid basis. DE 1 at 10. Workers assigned to jobs on temporary bids fill in for workers who hold that position on a permanent basis whenever those permanent workers are out on vacation or sick leave. DE 1 at 10. Because

1

of Plaintiff's injury, she could not perform the task of "flour blowing"—a Machine Handler task that involves attaching a heavy hose to a machine that fills supply cars with flour. DE 1 at 10. Plaintiff received a medial note from her doctor stating that she could perform the Material Handler position with an accommodation to not do flour blowing, or she could perform the Machine Operator position so long as she did not use her right hand and wrist for repetitive actions. DE 1 at 11. After Plaintiff provided the note to Defendant, Plaintiff was permitted to work as a Material Handler without having to perform the flour-blowing task from 2005 through 2008. DE 1 at 11.

Beginning in 2008, Defendant instituted changes to Plaintiff's accommodation as a temporary bid Material Handler. Specifically, Defendant required Plaintiff to perform the flour-blowing task whenever she was the most junior Material Handler on a shift. DE 1 at 13. Because Plaintiff could not perform the flour-blowing task, when that scenario arose Defendant assigned Plaintiff to the Machine Operator position. DE 1 at 13. Plaintiff contends that this constituted a failure and refusal to accommodate her disability in violation of the Philadelphia Fair Practices Ordinance. DE 1 at 13-14.

On September 17, 2008, Plaintiff filed a Complaint for disability discrimination with the Philadelphia Commission on Human Relations. DE 1 at 14. In January 2009, Plaintiff applied for a permanent Material Handler job with Defendant. Defendant did not give Plaintiff the job, instead awarding it to five other workers that were less senior than her. DE 1 at 14. On April 1, 2009, Plaintiff obtained a job analysis from her doctor, which concluded that Plaintiff could perform the Material Handler job provided that she was afforded an accommodation for flour blowing. DE 1 at 14. After informing Defendant of the doctor's analysis, Defendant's warehouse manager and human resources generalist informed Plaintiff that they could not

accommodate her for a permanent position after she had requested an accommodation on a temporary basis for the last three or four years on all shifts.  DE 1 at 14-15.

On May 11, 2009, Plaintiff filed a second complaint with the Philadelphia Commission on Human Relations, claiming disability discrimination and retaliation for filing her first complaint to the Commission.  DE 1 at 15.  On September 11, 2012, Plaintiff commenced this action in the Philadelphia Court of Common Pleas.  DE 3-1 at 7.  On January 31, 2013, Plaintiff filed an Amended Complaint in that court.  DE 1 at 8.

On October 25, 2013, Defendant removed the case to this Court.  DE 1 at 1.  Defendant contends that removal is proper under this Court's federal question jurisdiction.[1]  28 U.S.C. § 1331.  Although Plaintiff only raises state-law claims in her complaint, Defendant argues that the complaint raises a federal question because Plaintiff's claims are completely preempted by § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a).

## II.   Legal Standard

In general, the well-pleaded complaint rule governs whether a case is removable under federal question jurisdiction.  Under that rule, "a defendant may not remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 10-11 (1983); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").  Because Plaintiff only alleges violations of the

---

[1] Defendant also invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332 as an additional basis for removal.  Defendant cannot sustain removal under § 1332 because it did not timely remove the case within 30 days of being served with the Complaint.  28 U.S.C. § 1446(b).  Defendant argues that removal under § 1331 is timely because the existence of a federal question first became apparent only after the deposition testimony of Elijah Warren on September 27, 2013.  Because the Court finds removal improper on other grounds, it is unnecessary to evaluate Defendant's timeliness arguments.

Philadelphia Fair Practices Ordinance, the complaint does not raise a federal question under the well-pleaded complaint rule.

However, as Defendant notes in its brief, there exists an "independent corollary" to the well-pleaded complaint rule, known as the complete preemption doctrine. Under this doctrine, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

The complete preemption doctrine is frequently applied in cases raising claims that implicate § 301 of LMRA.[2] The LMRA is a statutory scheme that, among other things, governs the enforcement of collective bargaining agreements. The Supreme Court has held that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violations of contracts between an employer and a labor organization.'" *Caterpillar*, 482 U.S. at 394 (quoting *Franchise Tax Board*, 463 U.S. at 23). Accordingly, when "the heart of the state-law complaint is a clause in the collective bargaining agreement, that complaint arises under federal law." *Id.* (original alterations and citations omitted). Section 301 has also been held to completely preempt state-law claims that are "substantially dependent on analysis of a collective bargaining agreement," *Int'l Broth. of Elec. Workers AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987), or "inextricably intertwined with consideration of the terms" of the labor agreement, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 (1985). In *Berda v. CBS, Inc.*, the Third

---

[2] "Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce s defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

4

Circuit concluded that the phrase "inextricably intertwined" is equivalent to "substantial dependence."  881 F.2d 20, 27 n.8 (3d Cir. 1989).

Section 301, however, does not preempt state-law claims that only tangentially relate to the terms of a collective bargaining agreement.  *See Allis-Chalmers Corp.*, 471 U.S. at 211 ("[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."); *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996) ("Claims that are independent of a collective bargaining agreement, even if they are between employees and employers, are not removable."). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Furthermore, the presence of a defense that is based on the terms of a collective bargaining agreement is insufficient to establish complete preemption under § 301.  *Caterpillar*, 482 U.S. at 398-99 ("[T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule."). Complete preemption is determined by an analysis of the state-law claim—not a defense to it. *Id.* ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.").

### III. Defendant's Removal Burden

Before determining whether Plaintiff's state-law claims are completely preempted by the LMRA, the Court must assess whether Defendant has satisfied its burden to present evidence supporting its argument for federal jurisdiction.  *Frederico v. Home Depot*, 507 F.3d 188, 193

(3d Cir. 2007) (holding that a party asserting federal jurisdiction in a removal case bears the burden of showing that the case is properly before the federal court). Defendant must justify the claim of jurisdiction by a preponderance of the evidence. *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 397 (3d Cir. 2004) (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

In its Opposition to Plaintiff's Motion to Remand, Defendant claims that "the terms of the [Agreement between Kraft Foods Global, Inc. and Bakery, Confectionary, Tobacco Workers' and Grain Millers International Union AFL-CIO Local 492 ("CBA") are] directly at issue in this litigation." DE 5 at 3. No part of Plaintiff's complaint relies on a clause in the CBA. Therefore, to show that Plaintiff's claims are completely preempted by § 301 of the LMRA—and thereby justify federal question jurisdiction—Defendant must show that Plaintiff's claims are either inextricably intertwined with the CBA or are substantially dependent on an analysis of the agreement.

Defendant contends that the Court will be required to interpret the CBA in order to evaluate Defendant's actions in relation to Plaintiff's accommodation requests and the Material Handler position. Defendant bases this contention on the following assertions:

(1)  Plaintiff's complaint—though not explicitly citing the CBA—repeatedly references the contract's procedures and terms. DE 5 at 2.

(2)  In grievances filed against her employer, Plaintiff sometimes alleged breach of the seniority provisions of the CBA. DE 5 at 2.

(3)  The awarding of bids for jobs and the assignment for tasks for the Material Handler position are all controlled by the CBA's seniority clause. DE 5 at 2.

> (4)  The accommodation options that Defendant offered to Plaintiff that were cited in the Complaint were carefully crafted to abide by the provisions of the CBA.  DE 5 at 2-3.
>
> (5)  One of Plaintiff's requests for relief—to be awarded the position of permanent Material Handler—inextricably intertwines her case to the CBA because granting that relief would breach the CBA.  DE 5 at 5.

Despite these many assertions, assertions alone are insufficient to meet Defendant's burden to establish federal jurisdiction.  Defendant is required to make a showing.

As to Assertion (1), Defendant provides no indication where in the Complaint Plaintiff refers to the CBA or to what provisions in the CBA Plaintiff allegedly is referring.  There is not a single word of text quoted from the CBA in the record.

As to Assertion (2), whether at some point Plaintiff complained of violations of the CBA is irrelevant to the nature of her claims in this action.  True, if Plaintiff had alleged a breach of the CBA in her complaint, § 301 very well could have governing force.  As master of her complaint, Plaintiff did not so allege.  Defendant's allusions to claims that Plaintiif could have raised—but did not—are irrelevant to showing federal question jurisdiction here.

As to Assertion (4), Defendant provides no support for how its proposed accommodations complied with the CBA—a difficult task without any reference to the CBA itself.

In support of Assertion (3), Defendant cites to the deposition testimony of Elijah Warren for the proposition that the CBA governs the administration of the Material Handler position.  DE 1 at 52-53.  This assertion is presumably made to suggest that the accommodations Defendant could offer Plaintiff were constrained by the terms of the CBA.  This proposition is

reiterated in Assertion (5), which Defendant attempts to support by offering the Declaration of Plant Human Resources Manager William Oxenford: "Ms. Palmer's request for accommodation in the warehouse material handler position . . . would necessitate breach of the [CBA]." DE 1 at 58. Specifically, the Declaration notes that her request would violate "seniority procedures" mandated by the CBA. DE 1 at 58.

Although its argument for federal jurisdiction rests on interpretation of a seniority provision in the CBA, Defendant has not provided the Court a copy of the CBA or even a quotation of the relevant provision. The most relevant evidence Defendant cites in support of its argument that the CBA is completely preempted by the LMRA is a Declaration by a Human Resources Manager stating that one of Plaintiff's requests for relief would breach the CBA if granted. This of course is a bald legal conclusion that is unsupported anywhere else in the record. It thus lacks any probative value in determining whether Plaintiff's claims are inextricably intertwined with the CBA or whether her claims are substantially dependent on interpretation of that agreement. A legal conclusion from a declarant is not a substitute for the Court's review of the actual agreement.

Moreover, Defendant's exhibits in its Notice of Removal and Opposition to Plaintiff's Motion to Remand are silent as to what the CBA specifically requires or forbids. The record does not mention to what extent—if any—the CBA governs disability claims, what allowances the CBA may allow for union members with disabilities, or whether the CBA constrains the availability of discrimination remedies. Instead, Defendant offers only indirect references to the CBA. These vague references fail to provide the Court with any basis with which to evaluate the CBA.

In short, Defendant asks this Court to hold that the CBA is inextricably intertwined with Plaintiff's claims without reading a single word of the agreement. The Court simply cannot do this. Defendant has failed to meet its burden to establish federal question jurisdiction. "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987)). Although there is evidence in the record of a collective bargaining agreement, Defendant has not shown by a preponderance of the evidence that Plaintiff's claims are inextricably intertwined or otherwise substantially dependent on interpreting the agreement.

Even if the terms of the CBA were in the record, Defendant's complete preemption argument fails on the merits. Defendant argues that the CBA is inextricably intertwined with Plaintiff's claims because the Court will need to interpret the CBA "in order to evaluate [Defendant's] actions in relation to . . . [Plaintiff's] accommodation requests." DE 5 at 4. That is an artful way of saying that the CBA justified Defendant's actions—in other words, Defendant is raising the CBA as a defense. *See* DE 1 at 58 ("[Plaintiff's] request for accommodation in the warehouse material handler position . . . would necessitate breach of the [CBA]."). A defense that raises a federal question does not establish complete preemption. *Caterpillar*, 482 U.S. at 398-99.[3]

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion is granted. The case shall be remanded to the Philadelphia County Court of Common Pleas. Plaintiff may file a motion for the fees and

---

[3] Defendant's argument that Plaintiff's prayer for relief inextricably intertwines her case to § 301 is equally unavailing. Complete preemption is determined by an analysis of Plaintiff's claims, not her requested remedy. *See Beidelman v. Stroh Brewery Co.*, 182 F 3.d 225, 234-35 (3d Cir. 1999) (analyzing the elements of the alleged state law claims to determine whether their resolution substantially depends on interpreting a labor agreement governed by § 301).

costs incurred by Plaintiff as a result of the removal. 28 U.S.C. § 1447(c). An appropriate order follows.

O:\CIVIL 13\13-6260 palmer v. kraft food\Memorandum Remanding to State Court.docx

Case 2:13-cv-06260-MMB Document 6 Filed 01/29/14 Page 10 of 10